GEORGE JULIAND, Respondent, *v.* PETER B. RATH-
BONE et al., Appellants.

*General Assignment—Failure of Assignee to file Schedules and give Bond—Statute of 1860.*

That rule of construction, where the statute gives a remedy in addition to one existing at common law, without negative words, showing that the Legislature intended to make it exclusive, does not apply where the Act creates no new remedy, but is designed to regulate one already existing. In the latter case the rule is to consider, *First,* the mischief to be remedied; and *Second,* the remedy intended to be applied.

Action to recover damages for the taking and conversion of personal property consisting of a quantity of dry goods. The goods in question were, in May, 1860, the property of Nichols, who, on the twenty-first of that month, made an assignment thereof to the brother of the Plaintiff, in trust for his creditors, giving preferences. The assignment was acknowledged and the certificate thereof endorsed before delivery, as required by the act of 1860. The assignor did not make and deliver to the County Judge the inventory of his property, schedule of his creditors, &c., required by the act, until July 24, 1860, nor did the assignee give the bond required by the act, until the 23d of July, on which days, respectively, these acts were done. The assignee took possession of the assigned property, and sold portions thereof from time to time, until the 20th July, when he sold the residue of the goods, the property in question, to the Plaintiff, who paid therefor in cash and demands he held against Nichols, which were preferred in the assignment. The Plaintiff, upon his purchase, took possession of the goods, and received from both the assignee and assignor bills of sale, transferring their title of the goods to him. On the 23d of said July, the assignee filed with the County Clerk his bond, with sureties in the amount fixed by the County Judge, by whom the sureties were approved, and with the condition required by the third section of the act

(Laws 1860, Chap. 348), on the 24th of July, 1860. The assignor made an inventory of his property, and a schedule of his creditors, &c., verified by him, as required by the second section of the act of 1860, and delivered the same to the County Judge. After the filing of the bond of the assignee with the County Clerk, and before the levy by the Defendants, the assignee gave a second bill of sale of the goods to the Plaintiff, with a view to validate the sale, should his title be held defective. The Plaintiff also proved the taking and sale of the goods by the Defendants, and their value. The Defendants proved the recovery of a judgment in the Supreme Court against Nichols, on the 20th of July, 1860, and the issue of an execution thereon, and its delivery to Darby, who was the deputy of Rathbone, his co-Defendant, who was sheriff of Chenango county, for collection, before the filing of the bond by the assignee, who, on the 25th, levied the same upon the goods in question, and afterward sold the same by virtue thereof. At the close of the evidence the Defendants' counsel moved for a nonsuit, upon the grounds that the assignment of Nichols became void by the failure of the assignor to deliver an inventory of his property, &c., within the time required by the act of 1860, and of the assignee to give his bond as so required, and upon other grounds. The motion was denied, and Defendants' counsel excepted. The counsel requested the Court to charge the jury as in accordance with the above propositions. The Court refused, and the counsel excepted. The counsel requested the Court to submit to the jury, as a question of fact, whether the assignment by Nichols was made with a view to defraud his creditors? The Court refused, and the counsel excepted. The Court submitted to the jury the question as to the value of the property, and directed them to find a verdict for the Plaintiff for such value. To which direction the counsel for the Defendants excepted. The jury so found. The Court stayed the entry of judgment, and ordered the exceptions to be heard by the General Term. That Court, upon such hearing, denied a new trial, and ordered judgment for the Plaintiff upon the verdict. From which the Defendants appealed to this Court.

*S. S. Merritt* for Respondent.
*Rexford & Kingsley* for Appellant.

GROVER, J.—The Respondent's counsel insists that the judgment in the present case is not appealable to this Court, and cites Van Bergen *v.* Bradley, 36 N. Y. 316, in support of his position. The cases are not analogous. In the latter the judgment was entered upon the verdict without any order therefor by the General Term. In the present case the judgment was rendered upon the order of the General Term. It was, therefore, appealable to this Court without any further proceedings in the Supreme Court.

This case was regarded by the Supreme Court as involving the question whether an observance of sections 2 and 3 of chap. 348, Laws of 1860, by the assignor and assignee respectively within the time therein prescribed for the performance of the acts required, was necessary to the validity of the title of the assignee to the assigned property. That Court held these sections directory, and consequently that non-compliance with their provisions within the time prescribed did not impair the title of the assignee. In this I cannot concur.

The first section of the act provides that the assignment shall be duly acknowledged by the assignor and the certificate thereof duly endorsed before delivery to the assignee. Sec. 2 of the Act provides that the assignor shall at the date of the assignment, or within twenty days thereafter, make and deliver to the Judge of the county of his residence a schedule verified by him as prescribed by the act containing a full and true account of all his creditors, and their residence, as far as known; the sum owing to each creditor, and the nature of the debt, and how it arose ; the consideration of the debt and place where it arose; a statement of any security for any debt; an inventory of all his estate, and the incumbrances thereon, if any, and of the value of such, according to the best knowledge of the debtor.

Sec. 3 provides that the assignee shall, within thirty days after the date of the assignment (and before he shall have power or authority to sell, dispose of, or convert to the purposes of the

trust any of the assigned property), enter into a bond, with sureties, as prescribed by the section.

In construing these two latter sections the Supreme Court, as appears from the opinions delivered, applied the rule adopted in the construction of statutes prescribing the time for the performance of official acts by public officers in the performance of which the public have an interest. In construing these latter statutes, it is well settled that when the act prescribes a time for the performance of the act, without anything prohibiting the doing it after the time so fixed, the act shall be valid if performed after the time prescribed.

The reason for this construction is, that the public, or some portion thereof, have an interest in the performance of the act, and to prevent injury from the neglect of the officer the rule has been adopted. That class of cases, holding that where the common law confers a right or gives a remedy, and a statute is enacted conferring a new right or giving a new remedy, will be so construed as not to take away the common law right or remedy, unless it contains negative words, showing that such was the legislative intent, was somewhat relied on. Neither class is analogous to the present statute. The acts to be performed are by private persons, not public officers. The act creates no new right or remedy, but is designed to regulate an existing right merely.

In construing such statutes, the common law rule, as laid down by the elementary writers, is to consider : First, What mischief, if any, resulted from the exercise of the common law right. Second, What is the remedy provided by the statute for such mischief? Third, To give the statute such construction, if practicable, as will suppress the mischief, and make the remedy efficient, applying the rule to the present statute. The mischief to be remedied is obvious. To prevent pretended assignments being made obstacles in the way of creditors.

The first section provides that it shall be acknowledged, and the proof thereof (1) certified, before delivery. This Court has held (case not reported) that an assignment delivered without such

(1) See Transcript Appeals, Vol. 6, 323, Hardman *v.* Bowen.

acknowledgment and certificate is void.   This does not necessarily determine the effect of non-compliance with the requirements of the two following sections, as the judgment may be upheld by the provision that the acknowledgment, &c., shall be made before the delivery of the assignment.

But in the absence of this, I think the same construction should be given to the clause, which then would read, "Every conveyance, &c., made by a debtor in trust for his creditor shall be acknowledged."   Experience had shown that debtors frequently, with a view to defraud their creditors and make compositions with them advantageous to themselves, made general assignments of all their property in trust for creditors, giving no information of the character, situation, or value of the property assigned, or the amount of the debts, residence of creditors, whether the debts were secured, and giving no information to a creditor to enable him to ascertain anything in relation to the value of the property assigned, or the amount and bona fides of the debts entitled to share in the proceeds of the property.   To remedy this, the second section provides that within twenty days from the making of the assignment the assignor shall make a schedule, verified by his oath, giving all the requisite information.   This information will enable the creditors to defeat fraudulent assignments.   The intention of the Legislature was, I think, to require this schedule to be made as a necessary part of a valid assignment, and as a prerequisite of vesting an absolute title to the property in the assignee.

In view of the fact that time for the preparation of this statement might be required, twenty days were given for this purpose, after the delivery of the assignment, and in the meantime the title vested in the assignor was good against creditors, provided it was thereafter perfected by a compliance with sections 2 and 3 of the act; but in case of failure so to comply, the assignment must be adjudged void.

This construction will render these sections efficient in suppressing fraud, while that adopted by the Supreme Court renders them almost nugatory and useless.   The class of cases relied upon in the Supreme Court for holding these sections directory,

and therefore nearly, if not quite, useless, we have endeavored to show, rest upon a principle peculiar to themselves, having no analogy to the present case; and while their authority is fully recognized, they do not justify, much less require, a construction that will defeat the manifest intention of the Legislature, so to regulate the exercise of the rights of debtors in making assignments of their property in trust for creditors as to defeat fraud and insure the application of the entire property to the payment of honest debts.

Assignments were frequently made to assignees destitute of pecuniary responsibility. To remedy this, section 3 provides for giving security for the performance of the trust by the assignee within thirty days after the making of the assignment; and that until this is done the assignee shall have no power or authority to sell the property, or convert the same to the purposes of the trust. This shows that the assignee does not acquire title to the property absolutely until he gives the security. An absolute title includes the power to sell and dispose of it. This he clearly has not until the security required is given. But it may be said that his title may be perfected by giving the bond after the thirty days. If this be so, he may delay for any length of time. Remove the statutory limit of thirty days, and there is no limit whatever to the time during which the property may be tied up beyond the reach of creditors. Their only relief is an application to the Court to administer the trust; and hence this section, instead of securing creditors against irresponsible trustees, would only, by creating facilities for delay, afford additional means to debtors to defraud their creditors.

I think the true construction of the statute makes a strict observance of secs. 2 and 3 essential to the validity of the assignment, and that a non-compliance renders the assignment void as to creditors, whenever their right to the property attaches. It is said that this will place it in the power of the assignee to defeat the assignment by failing to give the bond. This is true.

But he may in the first instance refuse to accept the assignment, and in that event it would never have any effect. Assignors must

see, in selecting assignees, that they will not only accept, but that they can and will give the bond required; and assignees must take care to complete the assignment by giving the necessary schedule. It follows that the judgment cannot be sustained upon the validity of the assignment.

It remains to consider whether the judgment was right, conceding that the assignment had become inoperative. No question was made upon the trial but that the Plaintiff was a bonâ fide purchaser of the goods in question before he received a bill of sale from both assignor and assignee, at the time of the purchase, and took immediate possession of the goods. If the title was in either at the time of the purchase, the Plaintiff acquired it. True, he paid the purchase-money to the assignee, but this was with the assent of the assignor, and was equally effectual as if paid to the latter. If the Supreme Court was right in holding secs. 2 and 3 directory, the title was in the assignor, and the second bill of sale given by the assignee after he gave the bond, gave a good title to the Plaintiff, and this would be the effect although the assignment was fraudulent. (Sheldon *v.* Stryker, 42 Barb. 284.)

If I am right in my conclusion that the assignment had become inoperative by a failure to comply with secs. 2 and 3 of the act, the title was in the assignor, and the bill of sale from him to the Plaintiff conferred a good title to him. In either event the motion for a nonsuit was properly denied. The Judge was right in refusing to submit to the jury the question whether the assignment was fraudulent. That was immaterial. It was not claimed that the Plaintiff had any notice of any fraud.

The Defendant made no request to have any other question of fact submitted to the jury except the one above mentioned. The Judge did not err in directing a verdict for the Plaintiff for the value of the property.

The judgment appealed from must be affirmed.

Affirmed.

JOEL TIFFANY,
State Reporter.