City Stores Company *v.* Philadelphia, Appellant.

Argued January 8, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Abraham Wernick,* Deputy City Solicitor, with him *Abraham L. Freedman,* City Solicitor, for appellant.

*Stanley Folz,* with him *Robert John Brecker, Knox Henderson* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 22, 1954:

Plaintiff, City Stores Company, successfully maintained a bill in equity against defendant, the City of Philadelphia, to restrain it from assessing against plaintiff certain documentary stamp taxes. Defendant appeals from the decree of the court below granting the injunction prayed for.

An ordinance of the City of September 7, 1937,[1] entitled "To provide revenue by imposing a stamp tax upon certain transactions relating to documents and obligations; . . ." provided that "Every person who makes, executes, issues, or delivers any document . . .

---

[1] Repealed December 31, 1952, but saving any existing liabilities thereunder.

shall be subject to pay for, and in respect to such document, or for and in respect of the vellum, parchment or paper upon which such document is written or printed, a tax at the rate of five (5) cents for each one hundred (100) dollars, or fraction thereof, of the value represented by such document, payable at the time of the making, execution, issuance or delivery of such document." It further provided that "It shall be unlawful for any person to: 1. Make, execute, issue, deliver, or accept, or cause to be made, executed, issued, delivered, or accepted, any document without the full amount of tax thereon being duly paid, . . .". Any person violating any of the provisions of the ordinance was to be liable to a penalty of twice the amount of the tax, and, upon default in the payment thereof, to imprisonment.

Lit Brothers, a corporation which was subsequently merged into the plaintiff company, was the owner of the Widener Building on the northwest corner of Juniper & Chestnut Streets in Philadelphia. By written contract dated November 15, 1950, Lit Brothers agreed to sell and convey this property to one Lawrence D. Mayer, a resident of New York City, for the price of $4,000,000, payable $100,000 upon execution of the agreement, $100,000 within seven days thereafter, (which payments were made in New York at the times specified) $800,000 at the time of settlement, and the balance of $3,000,000 by a purchase money mortgage to be created at the settlement, which was fixed for January 30, 1951. This agreement was signed by the officers of Lit Brothers in Philadelphia and then by the purchaser in New York, and was delivered there to a representative of the real estate agent for Lit Brothers.

The purchaser, through his attorney, applied to the Land Title Bank and Trust Company for insurance covering the title of the purchaser and that of the

purchase money mortgagee. On the day fixed the parties met for settlement at the branch office of the Title Company in Upper Darby, Delaware County. There the balance of the purchase money was paid and the officers of Lit Brothers signed the deed of conveyance and acknowledged it before the manager of the Title Company's branch office, W. Allen Roney, who was also a notary public and a settlement clerk. The purchaser's nominee to take title executed the bond and mortgage. Thereupon, as the court below held in its adjudication, "delivery of the executed deed on behalf of Lit Brothers was accepted on behalf of the grantee by Mr. Roney, the settlement clerk, who took possession of the said deed as agent of the grantee, the title company's insured, for the purpose of causing it to be recorded in Philadelphia County, . . . and thereafter of having the title company procure it off record and transmit it to . . . the purchaser's attorney. . . . Thereupon delivery of the executed purchase money mortgage and bond, on behalf of the purchaser, was accepted by Mr. Roney, the settlement clerk, who took possession of the said mortgage and its accompanying bond as agent for Lit Brothers, the title company's insured, for the purpose of causing the mortgage to be recorded in Philadelphia County, . . . and thereafter of having the title company procure it off record and transmit it to the . . . mortgagee's agent."

The court found that all this was performed in the manner "customary in making settlements at title companies in Philadelphia and its vicinity." Mr. Roney handed the executed bond to the agent for Lit Brothers. The Title Company, as agent for its insured,—Mayer, the purchaser,—caused the deed to be recorded in the office of the Recorder of Deeds of Philadelphia County, and, when it was off record, procured it from that office and transmitted it to the purchaser's attorney.

Similarly, as agent for its insured,—Lit Brothers, the mortgagee,—the Title Company caused the mortgage to be recorded in Philadelphia and, when it was off record, procured it from that office and transmitted it to the agent for Lit Brothers.

It may be added that the grantee named in the deed, immediately after the conveyance to him at the settlement, reconveyed the property to the Widener Building Associates, Inc., subject to the mortgage.

The first question raised by appellant is whether the facts as thus found by the court below established a delivery of the deed at the settlement. It is clear that the answer to that question must be in the affirmative. It is true that the officers of the grantor corporation who signed and acknowledged the deed did not hand it directly to the purchaser. But no particular form or ceremony is necessary to effect delivery; it is sufficient if the grantor evidences his intention in any manner to put the document into the ownership of the other party and thereby to relinquish all control of it thereafter. The delivery may be inferred from the circumstances; it may be accomplished by words alone, by acts, or by both, and it is not necessary that actual manual investiture be proved.[2]

When, in the presence of the parties, with their acquiescence and in accord with their intent and purpose, the executed deed was handed to the settlement

---

[2] *Rigler v. Cloud*, 14 Pa. 361, 364; *Eckman v. Eckman*, 55 Pa. 269, 275, 276; *Lewis v. Merryman*, 271 Pa. 255, 257, 114 A. 655; *Hartman's Estate (No. 2)*, 320 Pa. 331, 335, 182 A. 232, 233; *Chambley v. Rumbaugh*, 333 Pa. 319, 322, 323, 5 A. 2d 171, 173; *Rynier Estate*, 347 Pa. 471, 475, 32 A. 2d 736, 738, 739; *Stiegelmann v. Ackman*, 351 Pa. 592, 596, 41 A. 2d 679, 681; *Gray Estate*, 353 Pa. 25, 27, 28, 44 A. 2d 286, 287; *Mower v. Mower*, 367 Pa. 325, 327, 80 A. 2d 856, 858; *Long v. McHenry*, 45 Pa. Superior Ct. 530, 533. See, also, Ladner, "Conveyancing in Pennsylvania," (2nd ed.) vol. 1, §63, p. 161.

clerk and accepted by him on behalf of the grantee to be recorded, delivery was thereby effected in accordance with the custom in making similar settlements at title companies, and the same is true in regard to the bond and mortgage. The court below properly so found.

Since delivery of these instruments was made, not in Philadelphia but in Delaware County, was the city entitled to the tax prescribed in the ordinance of September 7, 1937? The authority of the city to impose the tax was derived from the so-called Sterling Act of August 5, 1932, P. L. 45, which provided that "the council of any city of the first . . . class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect . . . such taxes on persons, transactions, occupations, privileges, subjects and personal property, *within the limits of such city* . . . as it shall determine, . . .". It becomes important, therefore to ascertain the exact subject of the tax imposed by the ordinance. We said in *Sablosky v. Messner,* 372 Pa. 47, 50, 51, 92 A. 2d 411, 413, speaking of practically an identical tax imposed by The Realty Transfer Tax Act of December 27, 1951, P. L. 1742, that it was not a tax on the real estate itself, nor on the document per se, nor on the vellum, parchment or paper on which it was written,[3] but a tax on "certain *transactions* pertaining to real estate." The title itself of the ordinance stated as its purpose the imposition of a stamp tax upon certain *transactions* relating to documents and obligations. The title is always a part of a statute or ordinance and, as such, must be considered in construing the enactment: *In re Beechwood Ave.,* 194 Pa. 86, 90, 45 A. 127, 128; *Duquesne Light Co. v. City of Pittsburgh,* 251 Pa.

---

[3] That an agreement for the sale of real estate was not a "document" within the meaning of the ordinance was decided with reference to the 1951 Act in *Smith v. Messner,* 372 Pa. 60, 92 A. 2d 417.

557, 563, 97 A. 85, 87; *Peoples Natural Gas Co. v. Pittsburgh,* 317 Pa. 1, 5, 175 A. 691, 693. The only "transaction" referred to in this ordinance is the making, execution, issuing and delivering of the instrument of title, and it was therefore upon those operations that the tax was imposed, and since they all took place in Delaware County and not "within the limits of such city" the transaction did not fall within the compass of the ordinance and the tax was accordingly avoided. If a person is about to conduct a transaction which is taxable in one jurisdiction but not in another, there is no apparent reason why he should be barred from performing it in the jurisdiction where it would be tax-free, and this is true even if the only reason for the choice was that of escaping the tax, since, if one has a legal right to do a particular thing, the law will not inquire into his motive for doing it: *Beirne v. Continental-Equitable Title & Trust Co.,* 307 Pa. 570, 577, 161 A. 721, 723; *Kirmse v. Adler,* 311 Pa. 78, 86, 166 A. 566, 569; *Leary v. Philadelphia,* 314 Pa. 458, 471, 172 A. 459, 464; *Rosenblum v. Rosenblum,* 320 Pa. 103, 108, 181 A. 583, 585; *Howard, Trustee v. Flanigan,* 320 Pa. 569, 573, 184 A. 34, 36; *C. I. T. Corporation v. Flint,* 333 Pa. 350, 356, 357, 5 A. 2d 126, 129; *Cohen v. Perrino,* 355 Pa. 455, 458, 50 A. 2d 348, 349; *Burkholder v. Westmoreland County Institution District,* 362 Pa. 645, 651, 68 A. 2d 436, 438, 439. See, in general, 51 Am. Jur. 43, §10.

Because of the views thus expressed it becomes unnecessary to decide whether, if the transaction were taxable, the assessment should be on the entire purchase price of $4,000,000 or only on the cash consideration of $1,000,000, and whether, in the latter event, either the bond or the purchase money mortgage of $3,000,000 would also be subject to the tax.

Decree affirmed at the cost of appellant.