## Klein's Estate

450

*Willard M. Bunnell*, for exceptant.
*Clement J. Reap*, contra.

SANDO, P. J., November 24, 1936.—At the hearing on the appeal the following stipulation of counsel was offered in evidence:

*Stipulation of counsel*

"Now, to wit, July 8, 1936, it is agreed by and between the Commonwealth of Pennsylvania, through its special attorney, Clement J. Reap, Esq., and W. M. Bunnell, attorney for Joseph Klein, appellant in the appeal from transfer inheritance tax imposed upon the estate of Clara Klein, deceased, taken to the above number and term, as follows:

"First: It is agreed that the statements made by appellant in paragraphs 'first', 'second', 'third', 'fourth' and 'fifth' of appellant's appeal, are correct.

"Second: It is further agreed, that the valuations placed upon the following real estate, for city and school taxes for the year 1935, were as follows:

"Property at 401 Franklin Avenue, Scranton,
  Pa., being lot no. 18, blk. no. 2, 16th ward,
  was assessed (land value only, as improve-

ments were owned by Standard Oil Company
of Penna.) at........................$2,860.00
"Assessment for county & poor taxes......... 4,400.00
"Property at 621-623 Washington Avenue,
Scranton, Pa. being lot no. 21, blk. no 15, 16th
ward, was assessed for city and school taxes
for the year 1935, lot and buildings, at .... 8,895.00
"Assessment for county & poor purposes...... 9,530.00

"W. M. BUNNELL

"Attorney for Appellant,
Joseph Klein

"CLEMENT J. REAP
Special Attorney for the
Commonwealth of Pennsylvania."

The appraisement on the lot 40 ft. x 150 ft., improved with a double frame dwelling house thereon, situate at and known as 621-623 North Washington Avenue, in the City of Scranton, was assessed at $16,000, which appellant denies is a fair and reasonable appraisal value. The rental income, it appears from the testimony, is $1320 a year.

The testimony shows, and it is a matter of general knowledge, that the value of real estate has greatly depreciated within the last five years. There is now practically no activity or market, particularly for real estate located in the immediate vicinity of the property in question, which makes it difficult to fix "a fair and conscionable" valuation as of the date of decedent's death.

The question of the value of real estate needs no involved reasoning, requiring only fairness and good business judgment, and it is obvious that any appraisement is not a precise, infallible and exact determination of the thing valued.

It is not the policy of the law to permit the Commonwealth for taxation purposes to assess the taxable value of real estate at the highest value it might possibly bring. The market value, under all the circumstances of separate tracts at public sale, after due notice, is the legal basis

recognized by our statutes for determining the assessable value of real estate. .

The statute contains no express provision as to the basis to be adopted for determining the "clear value" or as to the manner to be pursued by the appraiser in arriving at the amount he considers to be a fair valuation.

For inheritance tax purposes, the future anticipated or potential value of real estate is not a matter of concern. The test is the value at the date of death, in the instant case February 1935.

The rental returns from the real estate are not the best test of value. High rentals would be difficult to obtain, because of present conditions. The apparent value of a property is to be considered irrespective of rental returns.

At the hearing on the appeal, expert witnesses were called on behalf of the appellant, one of whom testified that the value he placed on the North Washington Avenue property was $7,500; the other was between $8,000 and $9,000. On behalf of the Commonwealth the appraiser, who had been in the employ of the inheritance tax department for over a year and who made the appraisement, made no change in his testimony as to the value he had placed on the property. A clerk in the office of the county board of assessors testified that the assessment made for county purposes is $9,530.

For the Franklin Avenue property the county assessment was placed at $4,400 and, as a method of appeal is provided and no appeal shown to have been taken, the amount is conclusive. The appeal from the assessment of the North Washington Avenue property is sustained to the extent of reducing the valuation to $9,530.

The appeal from the assessment of the Franklin Avenue property is sustained to the extent of reducing the valuation to $4,400.

Appellant has also appealed from the refusal of the appraiser to allow credit for a judgment note dated January 2, 1933, payable to Joseph Klein. The execution and

delivery was proven by two witnesses, children of decedent. It was admitted that it was not entered, and that no personal property tax was paid by Joseph Klein, the payee in the note. Appellant contends that the note is a debt of decedent. The claim is denied by a refusal to allow the note as a deduction from the gross value of the estate.

The Act of June 20, 1919, P. L. 521, art. I, sec. 2, provides:

"In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates shall be the debts of the decedent".

No consideration was shown for the note in question, but this is no defense to a note under seal: Candor & Henderson's Appeal, 27 Pa. 119. Any doubt as to the interpretation of a statute imposing a tax is to be resolved in favor of the taxpayer against the Commonwealth: Watson's Estate, 23 D. & C. 669. Tax laws must be construed most strictly against the Government and most favorably to the taxpayer, who cannot be subjected to special burden without clear warrant of law: Husband's Estate, 316 Pa. 361.

In Croushore's Estate, 77 Pa. Superior Ct. 340, it was held that two judgment notes, presented as claims against the estate of decedent by his son, who testified that payment thereof had never been made, should be allowed as proper debts of decedent in the absence of payment.

The payee in the note, Joseph Klein, is executor of the will, a trustee of its provisions for himself and his brothers and sisters, one of the heirs at law of decedent as to cash undisposed of thereunder, and also a legatee. It will be necessary to consider the facts in the instant case to determine whether or not Joseph Klein, by his acceptance of the will, has thus elected to accept the benefits therein conferred on him, and thereby estopped himself to claim against the estate as a creditor.

The will of testatrix provided, inter alia:

"Third. I give, devise and bequeath unto my beloved son, Joseph Klein, my apartment house situate at the corner of Penn Avenue and Mulberry Street, Scranton, Pa. to be his absolutely and forever. I make this bequest to him for the reason that it is his money which enabled me to pay for this property."

The will is dated October 28, 1930, and indicated that testatrix had received money from her son, but not whether it was received as a loan or gift. The note is dated January 2, 1933.

"An election to take under the will may be: Presumed on the theory of benefit; or proved by acts in *pais*. Not only by the surviving husband and widow, but by any legatee; and the necessary effect of such election is that he ratifies the whole will; but any donee may refuse intended bounty": Hawkins' Orphans' Court Principles and Practice 240, sec. 258.

In Stump et al. v. Findlay et al., 2 Rawle 168, 173, Chief Justice Gibson, speaking for the court, said:

"In courts of law, as well as of equity, no one can claim under a deed, without claiming under the whole of it, or take one clause, and reject the rest; the whole must be confirmed, or the whole abandoned."

The same principle was applied in Preston v. Jones, 9 Pa. 456.

One who accepts under a will is estopped from asserting a claim repugnant to its provisions, and, as Mr. Justice Williams says, this "doctrine . . . is founded on equitable considerations, and has been recognized and applied in this state in many cases": Tompkins v. Merriman et al., 155 Pa. 440, 446.

If Joseph Klein insisted on the collection of the face amount of the note, it may not have been his duty as executor to resist its collection, nor as legatee, but as trustee under the provisions of the will it would be his duty, because the collection would have necessitated the sale of the real estate. It does not appear that Joseph Klein has formally made his election to take as legatee, rather than

as a creditor, but by his very neglect or refusal to elect he has made his election to abide by the terms of the will. Upon the ground of implied benefit, the assent to a gift by a donee will be presumed; and the title will vest eo instante the gift is made, even though he be ignorant of the transaction, and will continue in him until he rejects it. The burden of proof in such case is on those who allege refusal to accept: Tarr et al. v. Robinson et al., 158 Pa. 60.

It is well settled that the penalty is not to be applied where there is litigation necessarily delaying settlement, or where there has been laches on the part of the Commonwealth. The interest charge in such case should be 6 percent per annum and not 12, and in the instant case it is so ordered.

Under the Act of June 20, 1919, supra, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by decedent, whether by will or under the intestate laws. It is not the interest to which a person succeeds at death, but the interest which ceased by reason of death, which the statute taxes.

Inasmuch as Joseph Klein surrendered by his election a claim upon the estate which could have been enforced, and accepted a gift from testatrix in satisfaction of his claim, it is apparent that the gift to him does not fall within the letter or spirit of the statute. His right was not dependent upon the bounty of testatrix. The property cannot be said to pass "to him under the will, any more than in case of a general testamentary direction to pay debts", in the language of Judge Penrose in Quin's Estate, 13 Phila. 340.

The clear value of the estate of decedent is therefore made up of the value of the North Washington Avenue property, or $9,530, as fixed in this opinion, the value of the Franklin Avenue property, or $4,400, as fixed in this opinion, plus $3,378.77 in cash, less funeral expenses of $335, and administration expenses of $593.94; the clear value is therefore $16,379.83.

We therefore conclude that by Klein's acceptance of the devise of the property at 401 Penn Avenue, he elected to accept it in payment of his debt.